1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  BRYANT ALLEN,

11            Plaintiff,                    No. CIV S-09-3068 JAM CKD P

12       vs.

13  S. M. ROCHE, et al.,

14            Defendants.          FINDINGS & RECOMMENDATIONS

15  _____/

16  I.  Introduction

17            Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action

18  seeking relief under 42 U.S.C. § 1983.  This case proceeds on the second amended complaint

19  ("Cmplt.") filed May 17, 2010.  Plaintiff claims that defendants Dr. Roche and Warden Felker

20  were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment

21  and state law.  Pending before the court is defendants' June 3, 2011 motion for summary

22  judgment.  Plaintiff has filed an opposition.  For the following reasons, the undersigned

23  recommends that defendants' motion be granted.

24  ////

25  ////

26  ////

                                    1

1  II. <u>Summary Judgment Standards Under Rule 56</u>

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4  matter of law."  Fed. R. Civ. P. 56(c).

5                  Under summary judgment practice, the moving party
                   always bears the initial responsibility of informing the district court
6                  of the basis for its motion, and identifying those portions of "the
                   pleadings, depositions, answers to interrogatories, and admissions
7                  on file, together with the affidavits, if any," which it believes
                   demonstrate the absence of a genuine issue of material fact.

8

9  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13  after adequate time for discovery and upon motion, against a party who fails to make a showing

14  sufficient to establish the existence of an element essential to that party's case, and on which that

15  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16  concerning an essential element of the nonmoving party's case necessarily renders all other facts

17  immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

18  whatever is before the district court demonstrates that the standard for entry of summary

19  judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

20          If the moving party meets its initial responsibility, the burden then shifts to the

21  opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

22  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

23  establish the existence of this factual dispute, the opposing party may not rely upon the

24  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25  form of affidavits, and/or admissible discovery material, in support of its contention that the

26  dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

1 │ must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2 │ of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3 │ (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4 │ 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5 │ return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6 │ 1436 (9th Cir. 1987).

7 │          In the endeavor to establish the existence of a factual dispute, the opposing party

8 │ need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9 │ claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10 │ versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11 │ judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12 │ genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13 │ committee's note on 1963 amendments).

14 │          In resolving the summary judgment motion, the court examines the pleadings,

15 │ depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16 │ any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17 │ 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18 │ court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19 │ Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20 │ produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21 │ Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22 │ 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23 │ show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24 │ as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25 │ 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26 │ \\\\

1   On July 8, 2010, the court advised plaintiff of the requirements for opposing a

2   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3   F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

4   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5   III. Discussion

6   A.  Legal Standard

7   Plaintiff alleges that defendants were deliberately indifferent to his serious

8   medical needs in violation of the Eighth Amendment.

9   Denial or delay of medical care for a prisoner's serious medical needs may

10   constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v.

11   Gamble, 429 U.S. 97, 104-05 (1976).  An individual is liable for such a violation only when the

12   individual is deliberately indifferent to a prisoner's known serious medical needs.  Id.; see Jett v.

13   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

14   2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).  To establish deliberate

15   indifference, an individual defendant must have "purposefully ignore[d] or fail[ed] to respond to

16   a prisoner's pain or possible medical need."  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.

17   1992) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

18   1997).  "Mere negligence in diagnosing or treating a medical condition, without more, does not

19   violate a prisoner's Eighth Amendment rights."  Id. at 1059.  "A difference of opinion between a

20   prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983

21   claim."  Franklin v. Or. State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).  Furthermore,

22   where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the

23   prisoner must show that the delay caused "significant harm and that Defendants should have

24   known this to be the case."  Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.  Mere

25   delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical

26   indifference."  Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

1        B.  Factual Background

2              Plaintiff, an inmate at High Desert State Prison, injured his hand in a February 7,

3    2008 fist fight with another inmate.  (Cmplt at ¶ 5; Dkt. No. 35-1 (excerpts from plaintiff's

4    deposition) at 8-9[1].)  Later that day, he was seen by a nurse for his hand injury.  (Dkt. No. 35-1 at

5    9.)  The next day, plaintiff was again examined by medical staff at HDSP, who took x-rays of his

6    hand, applied a hand splint, and gave plaintiff pain medications.  (Cmplt. at ¶¶ 7, 16, 19-24.)  On

7    February 25, 2008, plaintiff was transported to the Reno Orthopedic Clinic, where he was

8    diagnosed with a fracture of the right thumb and referred for a surgical consultation.  (Cmplt. at ¶

9    9; Dkt. No. 35-1 at 14, 29-30.)  On March 3, 2008, plaintiff was taken to the Quail Surgical &

10   Pain Management Center in Reno, Nevada for the surgical repair of his thumb fracture, which

11   included the placement of a pin; afterward, his hand was placed in a soft cast.  (Dkt. No. 35-1 at

12   18-19, 35-36.)

13             Plaintiff alleges that after the surgery, he "found himself in even more pain since

14   the thumb was set and put in a cast than he was before."  (Cmplt. at ¶ 10.)  On March 24, 2008,

15   plaintiff was examined by medical staff at HDSP, where he told the nurse: "I need to see the

16   results of my x-rays and also to [ ] follow up with the ortho M.D."  (Cmplt., Ex. G at 37; Dkt. 35-

17   1 at 21-21.)  On March 25, 2008, plaintiff was again seen by HDSP medical staff and reported

18   that his pain medication was "not helping at all."  (Cmplt., Ex. G at 36.)  The physician's notes

19   for that appointment state that plaintiff "must see orthopedic as scheduled appointment for

20   3/28/08."  (Cmplt., Ex. D at 26; Dkt. 35-1 at 22.)  Also on March 25, 2008, plaintiff wrote a

21   letter to defendant Roche, the Chief Medical Officer at HDSP, describing his thumb injury and

22   treatment, complaining that he was "in more pain now from this pin than I was before they put it

23   in," asking that he be sent "back down to Reno so they can get it out[]."  (Cmplt.., Ex. E at 28.)

24   Defendant Roche did not respond to this letter.

25

26       [1] Record citations refer to page numbers assigned by the court's docketing system.

1    On March 29, 2008, plaintiff was again seen by HDSP medical staff, where the

2  nurse repaired the top of his hand cast, which was unravelling, and adjusted his pain medication.

3  (Cmplt., Ex. G at 38; Dkt. No. 35-1 at 23-24.)  On April 25, 2008, plaintiff wrote a second letter

4  to Chief Medical Officer Roche, stating that he was in pain and "have still not been taken back

5  down town to have this pin taken out." (Cmplt., Ex. E-1 at 30-31.)  Also on April 25, 2008,

6  plaintiff wrote a letter to defendant Felker, the Warden at HDSP, describing his thumb injury and

7  treatment to date, stating that he was in pain, and asking to have the pin removed.  (Cmplt., Ex. F

8  at 33-34.)  Neither Roche nor Felker responded to these letters.

9    On May 30, 2008, plaintiff was taken back to the Reno Orthopedic Clinic, where

10  the pin was removed and plaintiff was assigned physical therapy exercises to strengthen his hand.

11  The physician who removed the pin did not indicate in his notes that failure to remove the pin

12  earlier "caused any kind of problem or any sort of medical condition." (Dkt. No. 35-1 at 24-26,

13  33.)  On September 3, 2008, plaintiff was seen at the Reno Orthopedic Clinic for follow-up,

14  where it was  determined that his fracture was healed, he was not in pain, and he could resume

15  full activities.  (Dkt. No. 35-1 at 34.)

16    C.  Analysis

17    1.  Eighth Amendment Claims

18    The Civil Rights Act under which this action was filed provides as follows:

19    Every person who, under color of [state law] ... subjects, or causes
    to be subjected, any citizen of the United States ... to the

20    deprivation of any rights, privileges, or immunities secured by the
    Constitution ... shall be liable to the party injured in an action at

21    law, suit in equity, or other proper proceeding for redress.

22  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

23  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

24  Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend §

25  1983 liability to attach where ... causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

26  (no affirmative link between the incidents of police misconduct and the adoption of any plan or

1   policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

2   another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

3   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

4   legally required to do that causes the deprivation of which complaint is made."  Johnson v.

5   Duffy, 588 F.2d 740, 743 (9th Cir.1978).

6              Moreover, supervisory personnel are generally not liable under § 1983 for the

7   actions of their employees under a theory of respondeat superior and, therefore, when a named

8   defendant holds a supervisorial position, the causal link between him and the claimed

9   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

10  (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

11  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

12  there is no evidence of personal participation). Vague and conclusory allegations concerning the

13  involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

14  of Regents, 673 F.2d 266, 268 (9th Cir.1982) (complaint devoid of specific factual allegations of

15  personal participation is insufficient).

16             As to Warden Felker, plaintiffs alleging civil rights violations by prison guards or

17  medical personnel often add their prisons' wardens or other superiors as defendants.  But such

18  supervisory officials are not liable vicariously for a constitutional deprivation committed by their

19  subordinates, unless (1) the supervisor personally participated in the deprivation or (2) there is a

20  sufficient causal connection between the supervisor's wrongful conduct and the constitutional

21  violation. Jeffers v. Gomez, 267 F.3d 895, 915-16 (9th Cir. 2001).  Here, plaintiff has not

22  alleged defendant Felker's personal participation in any act or omission showing deliberate

23  indifference to plaintiff's serious medical needs.  Drawing all inferences in plaintiff's favor, the

24  court assumes that Warden Felker received plaintiff's April 2008 letter asking to have the pin in

25  his thumb removed, and did not respond.  However, prison medical staff arranged to have the pin

26  removed at the Reno Orthopedic Clinic within one month of plaintiff's letter to Felker, and

1   medical records indicate that plaintiff's thumb subsequently healed and he was able to resume

2   normal activities.  Thus, although plaintiff's thumb continued to cause him pain after the pin was

3   inserted and he wanted the pin removed earlier than May 2008, it appears from the record that he

4   received constitutionally adequate medical care for his injured thumb.  See Hallett, supra, 296

5   F.3d at 745-746 (where prisoner alleges delay of medical treatment evinces deliberate

6   indifference, prisoner must show that the delay caused "significant harm and that Defendants

7   should have known this to be the case.").

8            Moreover, there is no evidence that Felker had any responsibility for arranging for

9   plaintiff's follow-up care at the Reno Orthopedic Clinic, or was responsible for any delay in

10  plaintiff's medical treatment.  See McGuckin, supra, 974 F.2d at 1062 (no genuine issue of

11  material fact as to whether defendants were responsible for delay in plaintiff's treatment where

12  they were not "the ones who scheduled surgical treatments and were charged with ensuring that

13  [plaintiff's] surgery occurred promptly.").  Thus there is no genuine issue of material fact as to

14  whether defendant Felker is liable for violating plaintiff's Eighth Amendment rights.

15           Similarly, the court assumes that defendant Chief Medical Officer Roche received

16  plaintiff's March 2008 and April 2008 letters asking to have the pin in his thumb removed, and

17  failed to respond.  However, plaintiff has presented no evidence causally linking this defendant to

18  any constitutional violation.  Thus plaintiff's Eighth Amendment claim against defendant Roche

19  should also be dismissed at the summary judgment stage.

20           2.  State Law Claims

21           Plaintiff also asserts claims arising under California based on the same allegations

22  that underlie his federal constitutional claims.  (Cmplt. at 8-9.)

23           Where a federal court has jurisdiction pursuant to 42 U.S.C. § 1983, the court may

24  exercise "pendent" or "supplemental" jurisdiction over closely related state law claims asserted

25  in the complaint.  See Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004) (citing 28

26  U.S.C. § 1367(a)).  "[A] plaintiff's pendent state law claims against a state or state employees are

1   barred unless the plaintiff has complied with the requirements of the California Tort Claims Act

2   ('CTCA') before commencing the civil action."  Wayne v. Leal, 2009 WL 2406299, at *7 (S.D.

3   Cal. 2009) (citing Ortega v. O'Connor, 764 F.2d 703, 707 (9th Cir. 1985), rev'd. in part on other

4   grounds, 480 U.S. 709 (1987)); see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621,

5   627 (9th Cir. 1988) (affirming dismissal of pendent state law claims against public employee

6   where plaintiff failed to allege compliance with the CTCA).  The CTCA applies to claims

7   brought against state employees "for injury resulting from an act or omission in the scope of his

8   employment as a public employee," Cal. Gov't Code § 950.2, and requires that tort claims

9   against state employees be presented to the California Victim Compensation and Government

10  Claims Board, formerly known as the State Board of Control, no more than six months after the

11  cause of action accrues, Cal. Gov't Code §§ 910, 911.2.  Here, plaintiff fails to allege compliance

12  with California's Tort Claims Act.  Therefore, his state law claims against defendants should be

13  dismissed.

14              Accordingly, IT IS HEREBY RECOMMENDED THAT:

15              1. Defendants' June 3, 2011 motion for summary judgment (Dkt. No. 34) be

16  granted; and

17              2. This case be closed.

18              These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

20  one days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within fourteen days after service of the objections.  The parties are

24  \\\\

25  \\\\

26  \\\\

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3     Dated: December 27, 2011

4   _____
     CAROLYN K. DELANEY

5     UNITED STATES MAGISTRATE JUDGE

6

7

2

8   alle3068.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26